## JULIA S. DUNN

*v.*

## WILLIAM C. YOUMANS.

*Opinion filed October 23, 1906—Rehearing denied Dec. 11, 1906.*

1. DRAINAGE—*an easement or a license to drain may be extinguished by parol.* An easement or license to drain land through the tile of an adjoining owner may be renounced, modified or extinguished by parol agreement of the parties.

2. SAME—*what has no place in record of drainage commissioners.* An agreement between a land owner and the commissioners of a drainage district, acting as individuals and as agents of another land owner, whereby the former releases a disputed right to a tile drain across the lands of the latter, has no place in the record of the drainage commissioners, and parol proof of the agreement does not vary, contradict or modify such record.

3. SAME—*when drain in a public highway cannot be interfered with.* A tile drain laid in the public highway by the owner of the fee with the consent, written or verbal, of the highway commissioners, cannot, under the act of 1889 to legalize drains constructed by license, be interfered with by any person as against another land owner whose land drains through the tile.

4. INJUNCTION—*when injunction to compel re-locating tile drain will not issue.* A mandatory injunction to compel a land owner to take up a certain tile drain and re-lay it in its original location with reference to the complainant's land will not issue where the preponderance of the evidence shows that the drain in its new location affords better drainage to complainant's land than it did in its original location.

5. SAME—*injunction will not issue to remedy an inconsequential wrong.* To entitle a person to relief by injunction he must establish an actual and substantial injury, and not merely a technical or inconsequential wrong entitling him to nominal damages; and this is true whether the injury be single or continuous.

APPEAL from the Circuit Court of Vermilion county; the Hon. M. W. THOMPSON, Judge, presiding.

G. W. SALMANS, and FRED DRAPER, for appellant.

JAMES DWYER, and W. H. DWYER, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellant and appellee are the owners of adjoining
farms in Vermilion county, separated by a road running
north and south, Mrs. Dunn's land lying to the east and
Youmans' land to the west of the road. The natural drain-
age of the eastern part of Youmans' land is across the road
and north-east across a part of the Dunn land. Something
more than twenty years ago two drains were put in the
Dunn land to carry away the surface water from that land
and from the land that naturally drained across it. The
drains were changed in some respects, until finally, at the
time this controversy arose, the smaller drain, composed of
five and six-inch tile, ran north-easterly across the Dunn
land, emptying into the larger tile drain, which some of the
witnesses said was ten inches in size and some nine, and
which ran nearly east and west across the Dunn land from
the road. The distance between these two drains where
they started into the Dunn land at the road was about
twenty-four or twenty-five rods. In 1903 a drainage dis-
trict for agricultural and sanitary purposes was formed in
the town of Oakwood, and all of the Dunn land in question
and forty acres of Youmans' farm immediately west of the
road were included. Under the law applicable to the dis-
trict the highway commissioners of the town of Oakwood
were *ex officio* the drainage commissioners. Youmans ob-
jected to the amount of his assessment and stated to the
commissioners that he already had sufficient drainage. Dur-
ing the attempts to settle this controversy, Dr. Dunn, the
husband of appellant, as her agent, had several interviews
with Youmans. There was a dispute as to who owned the
tile on the Dunn land composing the drains in question,
The drainage commissioners proposed to take up the nine
or ten-inch tile heretofore referred to, and put down in its

stead, as a part of the new drainage scheme, a fourteen-inch tile. Dr. Dunn offered to Youmans to leave the question as to the ownership of the tile to arbitrators, but this offer was not accepted. The drainage commissioners held a meeting for the purpose of discussing the objections of Youmans and two other objectors, and at Dr. Dunn's suggestion previously made to them, but not in the presence of Youmans, they agreed with Youmans that if he would drop his objections to the assessment of $200 for the forty acres immediately west of the road they would permit him to bring into the drainage district his other forty which joined the first forty on the west and would assess him only $20 for the second forty. The records of the drainage commissioners only show this part of the agreement. However, all three drainage commissioners testified that during this talk it was the understanding with Youmans that if they consented to this reduction he would drop all claim to all the tile on the Dunn land and did not care what was done with the ditches there. Dr. Dunn did not take part in the conference directly with Youmans, but this part of the talk was brought about by his suggestions to the commissioners that the whole controversy might be satisfactorily settled in this manner. On the other hand, Youmans claims that while he had some talk about his right to give up the tile he understood it to mean only the tile in the north drain,—the nine or ten-inch tile,—and did not understand he was referring in any way to the small drain of five and six-inch tile. The fourteen-inch tile was constructed in place of the north drain, extending from the road easterly across Dunn's land and running across the road westerly a few feet into Youmans' land. A few months after this, in August, 1904, Dr. Dunn, acting for appellant, took up the southerly or small drain on her land and the following month of September constructed a drain, using practically the same tile, in the highway on the east side of the traveled road, connecting on a curve or arc with the tile in Youmans' land and

extending to the north twenty-four or twenty-five rods, so as to run into the fourteen-inch drain. About the time the re-laying of this drain along the east side of the road was completed this bill for mandatory injunction was filed in the circuit court of Vermilion county, asking that appellant be compelled to re-place the small drain across her land as it was originally laid. The drainage commissioners were first made parties, but the bill was afterwards dismissed as to them. The cause was referred to a master to take evidence, which is made a part of this record. He recommended that the relief prayed for be granted as to the defendant, Mrs. Dunn. The circuit court approved the master's report and entered a decree commanding appellant to remove the filling and obstruction placed in the former ditch and restore the same and re-construct the tile so as to give the water from Youmans' land free passage, whereupon an appeal was prayed to this court.

Counsel for appellee insist that there is no record in the drainage proceedings of consent by Youmans to the taking up of the small tile and re-laying it in the road, and that this cannot be proved by parol; that where the law requires records of proceedings to be kept by drainage commissioners, as in this instance, such records cannot be contradicted, added to or supplemented by parol. (*People ex rel.* v. *Madison County,* 125 Ill. 334; *O'Connell* v. *Chicago Terminal Railroad Co.* 184 id. 308.) These cases announce correct principles, but we do not think they apply to the exact question here at issue. There was a dispute between the drainage commissioners and Youmans as to his assessment, and there was also a dispute between him and appellant, through her agent, Dr. Dunn, as to his right to the tile upon the Dunn land and the two drains in question. The drainage commissioners were only interested in the large drain and in getting an adjustment so they could put it in. The agreement as to the small drain they had nothing to do with except as individuals talking for Dr. Dunn. All three com-

missioners testified that they thought when they allowed the second forty acres of Youmans to come in for an assessment of $20,—far less in proportion than the other property was assessed,—he agreed that he would give up all right to all the tile and ditches in the Dunn land. This understanding as to his giving up his rights in the small drain rightly had no place in the record of the proceedings of the drainage commissioners. In making this arrangement the commissioners were acting, not as drainage commissioners, as they said, but in reality as the agents of appellant. It is admitted that this small drain across the Dunn land had been there so long that it would be, under the law, an easement in favor of appellee. But this easement or license to drain across the Dunn land by means of tile could be renounced, modified or extinguished by parol. (*Morse* v. *Copeland*, 68 Mass. 302; *B. P. R. R. Co.* v. *Doherty*, 154 id. 314; *Pope* v. *O'Hara*, 48 N. Y. 446; *M. & St. L. R. R. Co.* v. *St. P., M. & M. Ry. Co.* 35 Minn. 265.) If the evidence in this record clearly shows that appellee consented to the taking up of this drain, even though that consent be not in writing, he is legally bound thereby. It has been held many times by this court that the findings of the master in chancery, when approved by the trial court, will not be disturbed on review unless they are manifestly and clearly against the weight of the evidence. But a reading of the findings of the master and the decree of the court in this case leads us to believe that their decision was rendered largely because they thought the records of the board of drainage commissioners should have shown the agreement by appellee to release his right in the small tile. We cannot agree with this conclusion. By the same line of reasoning appellee could still claim his right to have the former nine or ten-inch tile replaced.

It is contended that appellee will not be protected unless this writ is granted, because the highway commissioners could at any time take up the small drain which was con-

structed along the highway. The highway commissioners act *ex officio* as drainage commissioners, but in putting drains in highways they act ordinarily as highway commissioners and not as drainage commissioners. It is not entirely clear whether, in permitting this drain to be put in the highway, they considered themselves acting as highway commissioners or as drainage commissioners. As appellant, Mrs. Dunn, owned the fee to her land in the east half of the road in question, subject only to the public easement, it might well be argued that on the facts shown here she would have a right to run this drain in the highway, provided she did not interfere with the public easement. The testimony is uncontradicted that the laying of the drain in the highway was a benefit to the road, and not an injury, and therefore a benefit to the public. Highway commissioners have a right to lay tile in the road and to make contracts with adjoining owners for that purpose. (Hurd's Stat. 1905, chap. 121, sec. 6, p. 1722.) The act of 1889, to legalize drains constructed by license, found on pages 832 and 833 of Hurd's Statutes of 1905, provides that whenever drains have been constructed in accordance with this act none of the parties interested therein shall, without the consent of all the parties, fill the same up or interfere with them, and that the license, consent or agreement with the parties need not be in writing, but shall be as valid and binding in parol as in writing. The Appellate Court for the Second District in *Daum* v. *Cooper,* 103 Ill. App. 4, in passing upon a similar question, discussed this last statute, and assumed that it applied to highway commissioners as it did to private owners. That case, on appeal to this court, was affirmed. On the record made in the case at bar the highway commissioners of the town of Oakwood have consented to the laying of this drain in the highway, and while that consent or agreement may not be in writing, they are bound thereby. Appellee is, therefore, protected in his right to drain the land through this small drain as it is now re-located in the high-

way, the same as he was across the Dunn land before it was taken up and re-located. Neither the public, through the highway commissioners, nor any private individual can interfere with this right.

What we have said here in no way conflicts with *Ribordy* v. *Murray,* 177 Ill. 134, *Hunt* v. *Sain,* 181 id. 372, and *Dorman* v. *Droll,* 215 id. 262. These decisions all recognize that a parol agreement between the owners of dominant and servient tenements will operate to extinguish an easement when such agreement is acted upon. In this case the agreement has been acted upon. It is an executed contract. 10 Am. & Eng. Ency. of Law, (2d ed.) 432; Jones on Easements, sec. 847.

To entitle a person to relief by injunction he must establish an actual and substantial injury, and not merely a technical or inconsequential wrong entitling him to nominal damages; and this is true whether the injury be single or continuous. The courts move with caution in granting any injunction, and especially in granting those of a mandatory character. As a rule they grant the last only to prevent extreme or very serious damage. (16 Am. & Eng. Ency. of Law,—2d ed.—342, 360, and cases cited; *Gray* v. *M. R. R. Co.* 126 N. Y. 499; *Bassett* v. *S. M. Co.* 47 N. H. 426; *Lorenz* v. *Waldron,* 96 Cal. 243; *Bigelow* v. *Hartford Bridge Co.* 14 Conn. 565.) The evidence tends very strongly to show that the present tile drain alongside the road furnishes better drainage facilities for Youmans' land than it did in its original position. It is true that Youmans himself testified to the contrary, but the decided preponderance of the evidence is to the effect that as the drain at present exists it is more advantageous to him than formerly. On the record before us we are compelled to conclude that there is no showing which would justify the granting of a mandatory injunction. The highway commissioners, even though they may not have a record permitting the re-laying of this drain in the highway, are estopped from hereafter interfering with

it. They must, in the future, unless released by appellee, furnish him along the highway equal drainage facilities to those he had across the Dunn land by means of the small drain.

The decree of the circuit court will be reversed and the cause remanded, with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*