(No. 23220.—

MARTHA KLUMPP *et al.* Appellees, *vs.* FLORENCE E. RHOADS *et al.* Appellants.

*Opinion filed February 14, 1936.*

R. H. RADLEY, and JOHN RADLEY, for appellants.

VERLE W. SAFFORD, for appellees.

Mr. JUSTICE JONES delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Peoria county, enjoining the defendants, Florence E. Rhoads, Frank S. Rhoads, her husband, and the Rhoads Oil Co. Inc., from operating a gasoline, oil and ice service station on the rear of the premises at 120 North Orange street in the city of Peoria. The suit was instituted by Martha Klumpp, owner of a residence in the vicinity of the station and the owners of six other residence properties in the neighborhood.

The lot on which the station is located is at the southeast corner of the intersection of North Orange and Russell streets. It fronts on the east line of North Orange street and runs east on Russell street 150 feet to a 20-foot alley. The Rhoads dwelling occupies the west end of the lot. The gas station is in the rear at the intersection of Russell street and the alley. It is a small one-story frame building with cement floor, two retail gas pumps in front, and buried tanks. An ice house holding three tons faces the alley. The title to the real estate is in Florence E. Rhoads. In August, 1925, she and her husband secured a permit from the city building commissioner to erect a garage on the premises and the building now standing was erected. In November of that year, Mrs. Rhoads applied for a permit to erect a garage for trucks, cars, and storage of barrelled oil, not to be used as a gas station. She filed a frontage consent purporting to be signed by the owners of two-thirds of the frontage on that block, but no permit was issued. Neither Frank S. Rhoads nor his wife ever applied for a permit to erect a gasoline or ice station. They began the sale of oil and gasoline in 1925 and have ever since operated a service station in the building. The retail-

ing of ice was begun in 1930. On March 1, 1931, the business was incorporated.

The complaint charges and the decree finds that the occupancy and operation of the premises as a gas, oil and ice station, are in violation of the permanent zoning ordinance of the city, adopted April 21, 1931; that the rest, comfort and privacy of plaintiffs are disturbed and their property has been depreciated in value, and that they will continue to suffer such loss as long as the business is permitted to operate.

Section 9 of the permanent zoning ordinance exempts existing lawful non-conforming uses from its terms, provided no structural alterations, except those required by law or ordinance, are made in the building. Plaintiffs claim that the structures were erected contrary to the terms of a frontage consent ordinance which had been in effect from July, 1923, to the passage of the zoning ordinance. The defendants claim the frontage ordinance was invalid; that their business lawfully existed and is therefore exempt from the provisions of the zoning ordinance, and that no structural alterations have been made.

The frontage consent ordinance provided that it shall not be lawful to locate, build, construct or maintain on any street in the city in any block in which two-thirds of the buildings on both sides of the street are used exclusively for residence purposes, any building for a livery stable, * * * garage, gas or oil station, and any other business or commercial industry not specifically mentioned, without the consent of two-thirds of the property owners, according to frontage, on both sides of such street. Under that provision, anyone desiring to locate or conduct any such business must obtain the consent of two-thirds of the property owners, according to frontage, on both sides of the whole street, regardless of its length or the character of the occupancy of the other blocks. If the business is to be located in the first block of the street, the property own-

ers at the other end of the street, however distant, would have as much voice in the consent as the owners of property adjacent to the proposed location. Russell street is eight blocks long. A witness for plaintiffs testified that the value of property one block away from the station would not be affected by it. A requirement for the consent of property owners who have no interest in the matter is arbitrary, oppressive and unreasonable. Such ordinances violate the due process clause of the State and Federal constitutions. (*Spies* v. *Board of Appeals*, 337 Ill. 507; *State of Washington* v. *Roberge*, 278 U. S. 116.) The principles underlying the holdings in those cases have been so often announced it is unnecessary to repeat them.

The ordinance prohibited the location of any business or commercial industry in such a block in the absence of frontage consents. Without a zoning ordinance the city had no power to regulate the location of any business not a nuisance *per se,* except those as to which the power was expressly delegated by the legislature. The retailing of ice is not a nuisance *per se* and is not included in those as to which the power is delegated. The ordinance was further void in that particular. (*Potson* v. *City of Chicago,* 304 Ill. 222; *People* v. *City of Chicago,* 261 id. 16.) There was no valid ordinance in 1925 prohibiting defendants from establishing and conducting their business on the premises in controversy. It follows that it was lawfully existing when the zoning ordinance was adopted in 1931 and was expressly exempted from its terms.

The contention that defendants made structural alterations in the building contrary to the provisions of section 9 of the zoning ordinance is not well supported. The alterations consisted of a cement floor, a toilet, the removal of a tree stump, changing two windows and a door, and painting the building. Such minor changes are not contemplated by the legal definition of structural alterations. *Kingston Cotton Mills* v. *Liability Assurance Corp.* 161 N. C. 562,

77 S. E. 682; *Plaza Amusement Co. v. Rothenberg,* 159 Miss. 800, 131 So. 350.

The other question presented is whether plaintiffs have shown such special damages as to entitle them to an injunction notwithstanding the lawful character of the business. When a business creates conditions which clearly render the appropriate enjoyment of surrounding property impossible, the rights of others are invaded, and equity will restrain the persistent pursuit of such injuries. If the damages are of a nature which cannot be adequately compensated for in a suit at law, equity will afford relief by injunction. On the other hand, lawful and useful business may not be stopped on account of trifling or imaginary annoyances which do not constitute real injury. If the right to relief is doubtful, either as to the law or under the facts proved, equitable relief will not be granted. (*Off* v. *Exposition Coaster, Inc.,* 336 Ill. 100; *Phelps* v. *Winch,* 309 id. 158.) A private citizen cannot maintain an action to restrain a public nuisance unless he is particularly and specially injured in a manner distinct from the injury suffered by him in common with the public at large. *Joseph* v. *Wieland Dairy Co.,* 297 Ill. 574; *Hoyt* v. *McLaughlin,* 250 id. 442.

There are ten plaintiffs, but only two of them own property in the same block on Russell street where the gas station is located. The location of the property belonging to two of the other plaintiffs is not shown and they did not testify. There is some testimony in the record tending to show that certain pieces of property would be salable at a better price for residence purposes if it were not for the existence of the gas station. Two witnesses testified that they were not able to sell their properties at the value which they placed on them. The fact that an owner of property is unable to sell it at the price he asks does not even tend to establish a depreciation in value because of the station's existence. The station and ice house had existed approxi-

mately nine years before the bringing of the suit. From an examination of the entire record, we have concluded that the testimony does not show any substantial depreciation in the value of the property of any of the plaintiffs on account of the station and that the testimony of some of the witnesses was an expression of opinion not supported by the facts in evidence. There is no sufficient testimony to show any substantial interference with rest, comfort or privacy of plaintiffs. Five apparently disinterested neighbors and owners of property within a block of the station testified that traffic in the alley is not impeded by trucks, that the station is orderly and clean, and that there are no objectionable features surrounding it.

Under the conditions presented by the record in this case, plaintiffs are not entitled to an injunctive process. The decree of the circuit court is therefore reversed and the cause is remanded with directions to dismiss the bill for want of equity.

*Reversed and remanded, with directions.*